IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| ANNETTE L. THIEL, d/b/a SWEET VALLEY PRODUCE,<br><br>Plaintiff,<br><br>vs.<br><br>ANN M. VENEMAN, SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, FARM SERVICE AGENCY ("FSA"), LAWRENCE NAYES, Individually and as an agent of the Defendant FSA, JEFFREY JANSHEN, Individually and as an agent of the Defendant FSA,<br><br>Defendants. | CV 09-168-BLG-RFC-CSO<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE ON DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Annette Thiel d/b/a Sweet Valley Produce (Thiel) filed this

action alleging discriminatory and disparate commercial lending policies

and practices by Defendants. Pending is Defendants' motion to dismiss

for lack of subject matter jurisdiction under Rule 12(b)(1)[1] and for failure to state a claim under Rule 12(b)(6). *Court Doc. 45.*

## I. <u>BACKGROUND</u>

Thiel alleges generally that the Farm Service Agency (FSA) of the U.S. Department of Agriculture and its agents discriminated against her during the past decade by failing to give her preferential treatment as a: (1) protected minority woman; (2) beginning farmer; (3) limited resources farmer; and (4) family farmer. *Second Am. Cmplt. (Court Doc. 44) at ¶ 1.* Also, Thiel claims that Defendants failed to provide her with proper loan counseling, servicing, and processing because she is a Native American woman, thus discriminating against her. *Id. at ¶¶ 1, 4.*

Specifically, Thiel alleges as follows:

In 2002, Thiel received a loan to purchase the family farm from her father on a 20-year payback schedule. Defendants, however, "should have given [her] a more favorable rate based on her limited resource standing ... [and] should have advised her about low-interest, long term farm ownership loan opportunities." *Id. at ¶¶ 14-15.* Also, Defendants failed

---

[1]References to rules are to the Federal Rules of Civil Procedure unless noted otherwise.

to properly administer her loan in that she "did not get the cash associated with the [farm and home plan] acreage and commodities that the local loan officer approved" and "did not get the appropriate emergency actual loss loans that she was entitled to[.]" *Id. at ¶¶ 16-17.*

In 2006, a "bad harvest" rendered Thiel unable to pay her operating loans or make annual payments on her FSA loan, which had to be restructured. Defendants "failed to provide proper loan counseling[,] administration and servicing," should have notified and "considered [Thiel] for servicing several times when she ran into payment problems[,]" and should have explained to her every time she did not qualify for assistance the reason she was denied assistance. *Id. at ¶¶ 18-19.* Thiel "lost approximately $70,000 because of the unusually bad, muddy/rainy conditions over which she had no control, all due to the defendants ... wrongful acts[.]" *Id. at ¶ 20.* She paid a premium to be enrolled in the Noninsured Crop Disaster Assistance Program (NAP), but Defendants "wrongfully and unlawfully failed to provide [payment under the NAP] to her[.]" *Id. at ¶¶ 21-22.*

In 2007, Thiel suffered further injury from Defendants when: (1) her

file was transferred from the Richland County FSA Office to the Custer County FSA Office for a conflict of interest while another farmer whose file was not transferred had a similar conflict of interest, *id. at ¶¶ 23-24*; (2) she "was subjected to numerous discriminatory, threatening, harassing and sexually harassing incidents of which she later made complaints to the Office of Adjudication and Compliance [OAC,]" *id. at ¶ 25*; (3) on June 4, 2007, she made a request for direct loan assistance and a month later, Defendant Jeff Janshen (Janshen) notified her that her request contained insufficient information; thereafter, Janshen and Defendant Lawrence Nayes, the FSA district director, "harassed [her] by requesting personal financial information ... that other loan applicants were not required to produce ... and by paying unannounced visits to her farm ... in an attempt to find cause to deny her loan application[,]" *id. at ¶¶ 26-28*; (4) after she "expressed her discontent" about her treatment to another FSA representative, her loan request was approved without her providing the additional requested information, *id. at ¶ 29;* (5) she did not actually receive FSA financial assistance until August 2007, having to pay expenses prior to that time herself, and being required during harvest to

take time away from work to provide financial information to Defendants even though her year-end assessment was not scheduled until January 2008, *id. at ¶ 31*; (6) in August 2007, Janshen demanded that she meet with him to provide a "detailed accounting of income, expenses, and production[,]" and in November 2007, Nayes threatened to terminate her loan for her failure to disclose farm records, which was treatment different from what other borrowers received, *id. at ¶¶ 32-33*; and (7) she advised Janshen and Nayes that she would be requesting an investigation about the handling of her file, and Defendants "fraudulently and wrongfully failed to give [her] any information about how to file an administrative complaint until December 2007[,]" *id. at ¶¶ 34-35*.

In 2008, the Bozeman FSA office denied Thiel's request to transfer her file to another office. *Id. at ¶ 36.* In late March and early April, Thiel filed a discrimination complaint against the FSA with the OAC, which "has totally failed to act to date on [her] complaint ... [making her] situation worse ... and [providing] further evidence that pursuing such a claim would be a futile and idle act." *Id. at ¶ 38.* Thiel sent three letters to the OAC requesting an update and status report on her complaint and

has received no response. *Id. at ¶¶ 39-41*.

In 2009, Thiel "purchased more NAP insurance" in March. *Id. at ¶ 42*. On June 30, 2009, Thiel's crops sustained hail and wind damage. She reported the loss within two days "but was wrongfully and fraudulently instructed by FSA agents ... to wait until after the 2009 harvest to fully report it." *Id. at ¶ 43*. In July 2009, she sent the Secretary of Agriculture a letter seeking a status report and update on her complaint and received no response. *Id. at ¶ 44*. In September 2009, she sent another letter to OAC seeking a status report and update, but received no response. *Id. at ¶ 45*. Also in September 2009, Thiel was in the Richland County FSA Office "to sign up for the 2008 SURE program and was again wrongfully and fraudulently instructed by FSA agents to wait to fully report the NAP loss until after the 2009 harvest." *Id. at ¶ 46*. In November 2009, she reported to FSA agents her production and was again wrongfully instructed to return "when the SURE information became available and at that time, report her 2009 actual production figures." *Id. at ¶ 47*. During this time, Thiel called FSA agents more than six times for advice as to when NAP information should be submitted and was given either

erroneous or no advice each time. *Id. at ¶¶ 48-49.* She did not discover she had been injured by Defendants' conduct until December 2009 when she first filed her complaint in this action. *Id. at ¶ 50.*

In 2010, Thiel requested in March "disaster set-aside program loan assistance for 2010" and "an emergency loan due to severe hail and wind damage that she suffered on June 30, 2009 and any other programs that she might be eligible for." *Id. at ¶ 51.* The FSA "failed to properly process this request[ ]" and approve her applications. *Id. at ¶¶ 51-52.* In May 2010, despite that she was overdrawn on her checking account by more than $1,000, "the FSA forced her to travel to Lewistown to confer in person with [FSA] agents there[.]" *Id. at ¶ 53.* In July 2010, Thiel called about her 2009 NAP benefits and she was "wrongfully and fraudulently advised that she did not qualify." *Id. at ¶ 54.* In September 2010, the FSA ordered an appraisal of Thiel's real estate with respect to her 2009 emergency loan application, but delayed the appraisal contending that her father was the farm operator. *Id. at ¶ 55.* In October 2010, she was advised that her loan application was complete and that her farm appraised for $530,000, yet she still did not receive approval of her loan

application. *Id. at ¶ 56.* On November 9, 2010, the FSA wrongfully denied Thiel's 2009 NAP claim on the basis that her notice of loss was not submitted within 15 days despite having previously misled her about when to submit her claim. *Id. at ¶ 57.* Afterwards, Thiel filed an administrative appeal, but Defendants neglected to inform her about the hearing date or that she was to appear. *Id. at ¶ 58.*

Finally, on February 17, 2011, the FSA "wrongfully denied [Thiel] emergency loan funds[.]" *Id. at ¶ 60.*

Thiel contends that these allegations support the following claims:

**Count 1:** Defendants "discriminated against [her] because of her sex, race, national origin, and disability with respect to a commercial loan in violation of the [Equal Credit Opportunity Act (ECOA),] 15 U.S.C. § 1691[,]" *id. at ¶ 67;*

**Count 2:** Defendants "discriminated against [her] as a member of a protected class, because of sex, race, national origin, and disability, with respect to her right to make and enforce contracts free from impairment by nongovernmental discrimination, in violation of 42 U.S.C. § 1981(a), (b), and (c)," *id. at ¶ 71;*

**Count 3:** Defendants "violated the CFR's [sic] applicable to [her], and to her loan processing, servicing, and counseling rights," and failed to promulgate CFRs "in various instances," *id. at ¶¶ 73-74;*

**Count 4:** Defendants, including Janshen and Nayes, "acted malicious[ly], fraudulently, wantonly, and oppressively toward [Thiel]," for which she is entitled to punitive damages, *id. at ¶ 76;*

**Count 5:** Defendants' acts have caused Thiel to suffer "severe and substantial emotional distress ... including humiliation, being held up to scorn in her community, and other physical and mental anguish[,]" *id. at ¶ 78*; and

**Count 6:** Defendants "have violated [Thiel's] due process rights under the Montana and U.S. Constitutions by denying her property and funds without proper notice and hearing," and failed to safeguard her due process and equal protection rights in denying loans and other entitlements, *id. at ¶¶ 80, 82-83*.

For her relief, Thiel seeks compensatory and punitive damages, attorney's fees, and costs. *Id., Prayer for Relief, p. 20 at ¶¶ 1-6*.

## II.   PARTIES' ARGUMENTS

### A.   Defendants' Arguments

Defendants rely on three principal arguments in seeking dismissal of Thiel's claims.  First, they argue that the Court lacks subject matter jurisdiction under Rule 12(b)(1) over some of Thiel's claims.  *Defts' Br. in Support (Court Doc. 46) at 5-7*.  Specifically, they argue that Thiel has not demonstrated subject matter jurisdiction or a waiver of sovereign immunity respecting: (1) her punitive damages claim (Count 4), which also is foreclosed by 15 U.S.C. § 1691e's preclusion of punitive damages against the U.S., *id. at 7-8*; or (2) her "CFR Violations" claim (Count 3), which also lacks identification of "any actionable legal duty[,]" *id. at 8-10*.

Defendants further argue that Thiel has failed to exhaust administrative remedies, which is required under the Federal Tort Claims Act (FTCA) when a claimant seeks damages against the United States. *Id. at 10-12.* And Defendants argue that, for all of Thiel's claims except one, she lacks Article III, section 2 constitutional standing because she lacks any injury capable of Court redress. *Id. at 12-15.*

Second, Defendants argue that Thiel's claims are barred by the statute of limitations. *Id. at 15-16.* They argue that 15 U.S.C. § 1691e(f) provides a two-year limitations period with two inapplicable exceptions. Defendants thus argue that "[t]o the extent Count I (ECOA) and any other derivative counts in the second amended complaint are founded upon such conduct, they must be dismissed." *Id. at 16.*

Third, Defendants argue that Thiel has failed to state a claim upon which relief can be granted under Rule 12(b)(6) because she makes merely conclusory allegations to support her ECOA claims. *Id. at 17.* Specifically, Defendants argue that: (1) Thiel cannot make out a prima facie case under the ECOA "because in the majority of instances she was not denied credit" and when "she was denied credit, it was due to lack of

qualification for the credit sought[,]" *id. at 18-20*; (2) Thiel cannot make a prima facie case under the ECOA for a discrimination claim arising from her NAP applications because the NAP does not provide "credit" as required for an ECOA claim, *id. at 20-22*; and (3) Thiel's alleged disability is not a protected class under the ECOA, thus precluding an actionable discrimination claim on that basis, *id. at 22-23*.

**B.    Thiel's Response**

Thiel disputes each argument.  First, she responds that this Court has subject matter jurisdiction.  *Thiel's Resp. Br. (Court Doc. 49) at 12*. Thiel argues that: (1) she is permitted to seek punitive damages against Defendants Nayes and Janshen individually so that Defendants' motion fails, *id. at 13-14*; (2) her "CFR Violations" claim is actionable because: (a) even technical violations of those CFR provisions intended to carry out the ECOA's purposes constitute discrimination, *id. at 14-15*; (b) the U.S. "waived sovereign immunity under ECOA because 15 U.S.C. § 1691(f) defines 'creditor' to include the 'government or governmental subdivision or agency,'" *id. at 15*; and (c) Defendants did not even discuss her claim "that the FSA failed in its duty to promulgate the appropriate CFR's [sic],"

which it is obligated to do, *id. at 15-16*; (3) she has exhausted her administrative remedies because: (a) the OAC has failed to act on her 2008 discrimination claim and the agency's failure to make a final disposition within six months is deemed a denial for exhaustion purposes, *id. at 16-17*; (b) her 2009 NAP claim was filed past the 15-day deadline because the FSA "repeatedly fraudulently told her that she did not need to make a claim within 15 days ... and then later wrongfully denied her NAP claim on that basis [and also failed to] tell her about the hearing or that she was supposed to appear," *id. at 17*; (c) the FSA is estopped from requiring exhaustion by its own actions, *id. at 17-18*; and (d) exhaustion is not required because Thiel alleges a constitutional claim not capable of resolution by an administrative appeal, *id. at 18-19*; and (4) her claims have Article III standing because Defendants failed to give her preferential treatment to which she was entitled, failed to provide crop and loan counseling and servicing, resulting in money damages, and caused her other damages as set forth in the second amended complaint, *id. at 19-22*.

Second, Thiel argues that her claims are not barred by the statute

of limitations because: (1) the FSA engaged in a continuing practice of discrimination against her that tolls the limitations period from running, *id. at 23-25*; (2) she did not discover her injury caused by Defendants' conduct until 2009, which is when she filed her complaint, *id. at 25*; and (3) "the FSA and its agents fraudulently concealed the truth regarding [Thiel's] claims and their discriminating practices[,]" *id. at 25-26*.

Third, Thiel argues that she has stated a claim under the ECOA and thus her second amended complaint survives Defendants' Rule 12(b)(6) motion. She argues that she already addressed Defendants' argument that she cannot make out a prima facie case under the ECOA in her response to Defendants' argument that her claims lack Article III standing. *Id. at 26.* Also, Thiel argues: (1) Defendants' factual discussion in support of their argument that Thiel was not denied credit in the majority of instances "is totally unsupported by any reference to a pleading, the record etc. and should again be ignored by the Court[,]" *id. at 27*; (2) Defendants' references to exhibits in support of their arguments are inappropriate in the context of a Rule 12(b)(6) motion, *id.*; (3) Defendants' argument that Thiel cannot establish a prima facie case

under the ECOA is premature until discovery has been done, *id. at 27-28*; (4) Defendants' reliance on the *Shiplet* decision[2] is misplaced because that case was decided after extensive discovery, which has yet to occur in this action, *id. at 28*; (5) her NAP claim is cognizable under the ECOA because her NAP applications were part of her overall dealing with the FSA in seeking loans and because NAP is designed to provide assistance to farmers and is more than just an insurance program, *id. at 29-32*; and (6) her carpel tunnel condition is a disability that places her in a protected class for purpose of her claims in this action, *id. at 32-33*.

## C.   <u>Defendants' Reply</u>

Defendants repeat their argument that the Court lacks subject matter jurisdiction over some of Thiel's claims.  They also argue that, to the extent the Court has jurisdiction over a few of Thiel's claims, she has failed to state a claim upon which relief can be granted.  *Defts' Reply Br. (Court Doc. 52) at 2.*

Specifically, Defendants argue that their motion does not rely on factual allegations but rather on legal bases.  They argue that: (1) punitive

---

[2]*Shiplet v. Veneman*, 2010 WL 2354155 (9th Cir. 2010).

damages are not available against the federal government (Count 4), *id. at 5*; (2) Thiel "alleges no substantive basis or waiver of sovereign immunity supporting Count 3 (CFR's)," *id. at 4, 5-8*; (3) although they withdraw their argument that Thiel has failed to exhaust administrative remedies with respect to her ECOA claims, she nevertheless has not shown exhaustion of administrative remedies for her claim of emotional distress (Count 5), *id. at 8*; (4) Thiel's claim that Defendants provided her with inadequate loan processing, servicing, and counseling fails because she received every loan for which she applied except for two denials; thus "[e]very claim that is not tethered to those two specific denials must be dismissed for lack of injury[,]" *id. at 8-9*; (5) Thiel's claims are time-barred because: (a) the "continuing-violation doctrine" is inapplicable here because of alleged discrete acts by Defendants, *id. at 10-11*; (b) the "discovery rule" does not apply to ECOA claims, *id. at 11-12*; and (c) no fraudulent concealment tolls the limitations period in this case, *id. at 13-14*; (6) Thiel has failed to state a cognizable claim under the ECOA because the two transactions alleged in her second amended complaint that are actionable contain no factual support indicating that she was

discriminated against for impermissible reasons or that Defendants' conduct fell within the ECOA's purview, *id. at 14-16*; and (7) the NAP cannot form a basis for an ECOA claim because "NAP claims are not credit, and are not cognizable under [the] ECOA" and because such claims are not an "aspect of a credit transaction,[ ] because they were separate from [Thiel's] application for credit[,]" *id. at 16-17*.

## III. LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. The burden of establishing jurisdiction rests upon the party asserting it. *Rattlesnake Coal v. E.P.A.*, 509 F.3d 1095, 1102 n. 1 (9th Cir. 2007).

"Unless the jurisdictional issue is inextricable from the merits of a case, the court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (quoting *Kingman Reff Atol Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th

Cir. 2008)).  The Court does not presume that a plaintiff's factual allegations are true, but instead weighs the evidence to find the facts, so long as this factfinding does not involve the merits of the dispute.  *See Robinson*, 586 F.3d at 685.

**B.    Rule 12(b)(6)**

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ___ U.S. ___, *129 S. Ct. 1937, 1949 (2009)* (internal quotation marks and citations omitted).   "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... ." *Bell Atlantic Corp. v. Twombly*, *550 U.S. 544, 555 (2007)* (internal quotation marks and citation omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, *129 S.Ct. at 1949* (citing *Twombly*, *550 U.S. at 557*).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, *129 S.Ct. at 1949* (citing *Twombly*, *550 U.S. at 570*). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, *550 U.S. at 556*). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id.* Furthermore, the Court is not obligated to accept as true "legal conclusions" contained in the complaint. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950.

## IV.  DISCUSSION

### A.  Subject Matter Jurisdiction

#### 1.  Count 4 – Punitive Damages Claim

The parties agree that punitive damages are not available to the

extent that they are sought against the federal government under the ECOA.  *Court Doc. 49 at 13-14; Court Doc. 52 at 5*.  The ECOA supports this conclusion.  *See* 15 U.S.C. § 1691e(b) ("Any creditor, other than a government or governmental subdivision or agency, who fails to comply with any requirement imposed under this title shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000[.]").  Thus, the Court will recommend that Defendants' motion be granted to the extent it seeks dismissal, with prejudice, of Thiel's claim for punitive damages against the federal government.  This conclusion and recommendation does not apply to Thiel's claim for punitive damages against Defendants Nayes and Janshen in their individual capacities.

### 2.  <u>Count 3 – "CFR Violations"</u>

The Court will recommend that Count 3 of Thiel's Second Amended Complaint be dismissed without prejudice.  Count 3 provides:

> 73.  The Defendants have violated the CFR's [sic] applicable to [Thiel], and to her loan processing, servicing, and counseling rights, without limitation to her detriment. Even technical violations of CFS's [sic] intended to carry out ECOA's purposes constitute discrimination.
>
> 74.  The FSA has a duty to promulgate CFR's [sic] in various instances, which it failed to in this case, all to [Thiel's]

detriment.

*Court Doc. 44 at 18.*

Violations of ECOA regulations may be actionable. *See, e.g., Shiplet v. Veneman*, 620 F.Supp.2d 1203, 1206 (D. Mont. 2009) (Judge Cebull noting Secretary of Agriculture's acknowledgment that "a violation of the regulation[s] under ECOA may be actionable ...."); *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982) ("a clear violation of" a regulation "created to carry out the purposes of the ECOA" should be considered "discrimination" within the ECOA's meaning). But here, Thiel has wholly failed to identify any particular regulation that Defendants allegedly violated. Rather, she generally alleges violations of regulations applicable "to her loan processing, servicing, and counseling rights, without limitation[.]" *Court Doc. 48 at ¶ 73.*

As noted above, while "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Although Thiel, in her response brief, directs the Court to ¶¶ 2, 6, and 9 of her Second Amended Complaint as supporting Count 3, *see Court Doc. 49 at 15*, none of those

paragraphs elucidates her regulations-violations claim with sufficient specificity to state a plausible claim. *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).

Paragraph 2 simply states that Thiel is bringing the action based on Defendants' violations of regulations – again, without any indication of which specific regulations have been violated. *Court Doc. 44 at 2.* Paragraph 6 states, in relevant part, that CFRs charge Defendants with serving and assisting farmers and ranchers. *Id. at 3.* No allegation points to what those regulations might be or how Defendants' acts or omissions violated them. And paragraph 9 recites that Defendants should have treated Thiel as a protected minority because she was a "single woman running her own farm[.]" *Id.* This allegation similarly fails to clarify for Defendants the regulations Thiel accuses them of violating. For these same reasons, Thiel's claim that the FSA has failed to promulgate CFRs "in various instances" also fails.

In sum, without more specificity, it is impossible to discern whether the regulations at issue concern "the type of discrimination which the [ECOA] was created to prohibit" and thus whether they fall within the

ECOA's waiver of sovereign immunity. *See Anderson*, 666 F.2d at 1276 (*citing Smith v. Lakeside Foods, Inc.,* 449 F.Supp. 171, 172 (N.D. Ill. 1978)). Thus, Count 3 must be dismissed. Because it is possible that Thiel could amend, dismissal of this claim should be without prejudice to her ability to move for leave to amend.

### 3. Exhaustion of Administrative Remedies

The Court will recommend that Defendants' motion to dismiss be denied to the extent it argues that Thiel failed to exhaust administrative remedies with respect to her emotional distress claim. When Defendants initially argued failure to exhaust, the thrust of their argument was directed at Thiel's ECOA claim. It was not until their reply brief that they withdrew their argument, to the extent it related to the ECOA claim, and redirected it at Thiel's emotional distress claim. Thus, Thiel has not had an opportunity to respond.

### 4. Article III Standing

The Court will recommend that Defendants' motion to dismiss be denied to the extent it alleges that Thiel lacks standing. At this juncture in the proceedings, the Court is unpersuaded by Defendants' argument

that only one of Thiel's credit transactions potentially resulted in an injury capable of being redressed in this action.

Defendants' argument that Thiel suffered no injury because, with one exception, she received every loan she sought and was allowed to "restructure her loans numerous times," necessarily renders the jurisdictional issue "inextricable from the merits of case." *See Robinson*, 586 F.3d at 685. Where "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (internal quotations and citation omitted). Thus, the Court must treat the motion as any other substantive challenge to the dispute's merits, and reserve resolution of fact issues until the record is more fully developed. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51 (2000)).

Here, on the current record, the Court cannot determine whether Thiel has suffered injury in her dealings with Defendants. She claims

that she has. *See generally Court Doc. 44.* Defendants have submitted

no evidence to the contrary. Rather, they have advanced only

unsupported argument in their brief supporting their motion. *Court Doc.

46 at 12-15.* The jurisdictional issue – including questions of whether and

how Thiel was injured – is intertwined with the merits of Thiel's claims

and is not amenable to resolution by dispositive motion at this time.

Thus, the Court must recommend that Defendants' motion to dismiss be

denied to the extent it alleges that Thiel lacks standing.

### B.   Statute of Limitations

As noted, Defendants argue that the ECOA's two-year statute of

limitations bars Thiel's ECOA claims to the extent that the facts giving

rise to them occurred before December 31, 2007 – that is, two years before

Thiel initially filed this action. *Court Doc. 46 at 15-16.* Defendants argue

that "none of the conduct described in paragraphs 9-35 [of Thiel's Second

Amended Complaint discussing matters from 2002 through 2007] can form

the basis for a valid claim of discrimination under [the] ECOA." *Id. at 16.*[3]

---

[3]Defendants raise this argument in that section of their brief
devoted to dismissal for lack of subject matter jurisdiction under Rule
12(b)(1). "Because the ECOA statute of limitations is not a condition on
the government's waiver of sovereign immunity, the failure to comply

Thiel responds that the limitations period is tolled because: (1) Defendants had a "continuing discriminatory policy/practice" from 2002 on; (2) she first discovered her injury in 2009; and (3) Defendants "fraudulently concealed" from her their discriminatory practices during the period at issue. *Court Doc. 49 at 23-26*.

A party may move to dismiss claims under Rule 12(b)(6) for being time-barred if "the running of the statute [of limitations] is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citation omitted). A challenged claim "cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

The Court concludes that Thiel's claims based upon conduct occurring before December 31, 2007, are time-barred, and that Thiel's

---

with the statute of limitations is not a jurisdictional failing." *Williams v. Conner*, 522 F.Supp.2d 92, 99 (D. D.C. 2007). Thus, Defendants more appropriately should have presented this argument in that portion of their motion and brief devoted to dismissal for failure to state a claim under Rule 12(b)(6). The Court will treat this portion of their motion as though Defendants brought it under Rule 12(b)(6).

argument that the limitations period should be tolled is not persuasive. Thus, for the reasons that follow, the Court will recommend that Defendants' motion to dismiss be granted to the extent it seeks dismissal of claims founded on conduct occurring before December 31, 2007.

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age[.]" 15 U.S.C. § 1691(a)(1). The ECOA provides that "[n]o action shall be brought later than two years from the date of the occurrence of the violation[ ]" unless either of two exceptions – neither of which apply here – extend the time. 15 U.S.C. § 1691e(f).

As explained below, the Court concludes that Thiel's claims, to the extent they are founded upon conduct occurring before December 31, 2007, are barred by the applicable limitations period and that she can prove no set of facts establishing their timeliness.

### 1.    Continuing Violation Doctrine

Discriminatory practices that are continuing violations must be distinguished from practices that are discrete acts of discrimination.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). To do this, courts must identify the specific discriminatory practice at issue. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624 (2007) (*superseded by statute on other grounds*) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002)).[4]

When discrimination is alleged to result in disparate impact, a plaintiff may satisfy the continuing violation exception to a limitations period. *Havens Realty*, 455 U.S. at 381. When claims allege disparate treatment, however, it is not enough to allege a practice of discrimination that spans time and comes from a series of related acts to trigger the continuing violation exception. *Morgan*, 536 U.S. at 113-17. If the "practice of discrimination" at issue is divisible into discrete acts, with each individually actionable, the continuing violation exception does not

---

[4]The cases cited did not involve claims under the ECOA. *Havens Realty* involved alleged racial discrimination under the Fair Housing Act of 1968. 455 U.S. at 366-67. *Morgan* involved alleged racial discrimination and retaliation in the employment context under Title VII of the Civil Rights Act of 1964. 536 U.S. at 104-05. *Ledbetter* involved alleged sex discrimination in employment under Title VII and a claim under the Equal Pay Act. 550 U.S. at 621. The Court concludes that the Supreme Court's analysis of the continuing violations doctrine in these cases applies with equal force to Thiel's ECOA discrimination claims.

apply, and legal action for each discrete act must be brought within the applicable limitations period. *Id.* Since *Morgan*, the Supreme Court has further held that "current effects of [discriminatory conduct outside of the limitations period] alone cannot breathe life into prior, uncharged discrimination [because] such effects in themselves have no present legal consequences." *Ledbetter*, 550 U.S. at 628 (citation and internal quotation marks omitted).

In the case at hand, during the time before December 31, 2007, Thiel alleges disparate and discriminatory treatment, not impact, as is evidenced by her express allegations stated throughout her complaint. *See, e.g., Court Doc. 44 at ¶¶ 9* ("should have treated her as a protected minority"), *12* ("should have treated [her] as a preferred client"), *13* ("treatment of [Thiel] reduced the amount of monies available to her"), *27* (arguing existence of a "pretextual reason for disparate treatment" of Thiel), *31* (she received delayed financial assistance because of "disparate treatment"), and *33* (Defendants "treated [her] differently [from] other FSA borrowers). And in Count 1, she expressly claims disparate treatment as her cause of action under the ECOA. *Id. at ¶¶ 68-69.*

Also, and more significantly, all of the specific examples of conduct about which Thiel complains, as alleged, were discrete acts. In her brief, Thiel cites those paragraphs of her Second Amended Complaint for each year at issue in which she alleges Defendants failed to: provide proper crop and loan counseling and servicing; give her a more favorable loan rate; advise her about low interest loans; give her cash associated with her FHP; properly notify her of loan servicing; explain to her why she did not qualify [for a loan or servicing]; give her an NAP payment; and others. *Court Doc. 49 at 23-24.*

Each example evidences a discrete act, each of which could have been individually actionable. Under *Morgan*, legal action for each discrete act must be brought within the applicable limitations period. 536 U.S. at 113-17. The continuing violation exception does not apply.

Also, to the extent that Thiel argues that any of these discrete acts had a lasting detrimental effect or impact on her that extended into the limitations period, such as her allegation that she did not receive a more favorable interest rate on a loan made before the limitations period, her argument fails. As noted above, "current effects of [discriminatory

conduct outside of the limitations period] alone cannot breathe life into prior, uncharged discrimination [because] such effects in themselves have no present legal consequences." *Ledbetter*, 550 U.S. at 628 (citation and internal quotation marks omitted); *see also Garcia v. Brockway*, 526 F.3d 456, 462-63 (9th Cir. 2008) (en banc) (rejecting theories, including continuing violation doctrine based on continuing effects, to extend limitations period in Fair Housing Act case).

For these reasons, the Court concludes that the continuing violation doctrine does not apply to toll the applicable limitations period.

## 2. <u>Discovery Rule</u>

Thiel argues that she "did not discover that she had been injured by Defendants' conduct until December 2009" and that, under the ECOA, "the statute of limitations does not begin to run until the Plaintiff discovers that he/she has been injured[.]" *Court Doc. 49 at 25* (citing *Wise ex rel. Wilson v. Union Acceptance Corp.*, 2002 WL 31730920 at *5 (S.D. Ind. 2002) and *Jones v. Citibank Fed. Sav. Bank*, 844 F.Supp. 437, 440-42 (N.D. Ill. 1994) (applying discovery rule to Fair Housing Act case)).

The discovery rule generally "serves to extend the time from which

the limitations period starts to run until the plaintiff knows both the existence and the cause of his injury." *Garcia v. Brockway*, 526 F.3d at 465 (citation and internal quotation marks omitted). The ECOA does not expressly provide for the discovery rule.

Although the Ninth Circuit has not directly addressed application of the discovery rule in an ECOA action, two circuit courts of appeal have flatly held that the discovery rule does not apply to ECOA claims. *See Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (relying, in part, on *TRW Inc. v. Andrews*, 534 U.S. 19, 32 (2001), in which the Supreme Court stated that the discovery rule "does not apply to statutes [such as the ECOA] that key the start of the limitations period to 'the date of the occurrence of the violation.'") and *Mays v. Buckeye Rural Electric Cooperative, Inc.*, 277 F.3d 873, 879-80 (6th Cir. 2002) (confirming the Iowa Supreme Court's statement in *Marine Am. State Bank of Bloomington, Ill. v. Lincoln*, 433 N.W.2d 709, 712 (Iowa 1988), that "[t]he statute's focus is upon the time of discriminatory actions, not at the time at which the consequences of the action become painful").

The Court finds persuasive the reasoning from these circuit court

decisions, and Thiel has failed to present any argument, supported by relevant authority, to challenge them. Thus, the Court concludes that the discovery rule does not apply here to toll the limitations period on Thiel's ECOA claim.

### 3. **Fraudulent Concealment**

Thiel argues that Defendants "fraudulently concealed the truth regarding [Thiel's] claims and their discriminating practices[.]" *Court Doc. 49 at 25-26.*

Fraudulent concealment, used as a basis to equitably estop another party from relying on a limitations period to bar a claim, "is based on the principle that a party 'should not be allowed to benefit from its own wrongdoing.'" *Estate of Amaro v. City of Oakland*, ___ F.3d ___, 2011 WL 3195372 at *4 (9th Cir., July 28, 2011) (quoting *Collins v. Gee West Seattle, LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011)). Fraudulent concealment "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." *Id*. (citation omitted). In the Ninth Circuit, it is the plaintiff's burden of pleading and proving "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions

giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Id.* (quoting *Bolt v. U.S.*, 944 F.2d 603, 609 (9th Cir. 1991)).   And if a plaintiff asserts fraudulent concealment against the government, "there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government." *Id.* (quoting *Bolt*, 944 F.2d at 609).

Here, Thiel argues that Defendants fraudulently concealed "the truth regarding [her] claims and their discriminating practices, e.g. in 2007 by failing to disclose that other loan applicants were not required to disclose personal financial information[.]" *Court Doc. 49 at 25-26* (citing *Court Doc. 44* (Second Amended Complaint) *at ¶¶ 28-29*).   But there are two problems with this argument.

First, even if her allegation is true, Thiel has neither argued nor shown that Defendants had a duty to disclose to her that other loan applicants were not required to provide the same information.

Second, Thiel acknowledges that the loan at issue was approved, without the additional financial information requested, only four days

after Defendants are alleged to have fraudulently concealed from her the fact that other loan applicants were not asked for the same information she was asked to provide. *Court Doc. 44 at ¶ 29.* Thus, she has not shown or even argued that these events resulted in "a serious injustice outweighing the damage to the public interest of estopping the government." *Estate of Amaro*, ___ F.3d ___, 2011 WL 3195372 at *4.

Finally, the remaining alleged acts of fraudulent concealment Thiel raises in her response brief, *see Court Doc. 49 at 26*, deal with events that allegedly occurred in 2009. Thus, they are not the subject of Defendants' timeliness argument.

For the above reasons, the Court concludes that Thiel's claims that are dependent upon conduct occurring before December 31, 2007, are time-barred. The Court will recommend that Defendants' motion to dismiss be granted to the extent it seeks dismissal of claims founded on conduct occurring before December 31, 2007.

## C.    Failure to State a Claim

As noted, Defendants challenge Thiel's ECOA claims in three ways. First, they argue that she cannot make a prima facie ECOA case because

she was either not denied credit or was denied credit for appropriate reasons. *Court Doc. 46 at 18-20*. Second, they argue that Thiel's claim of discrimination arising from her NAP applications fail because NAP does not provide credit thus precluding an ECOA claim. *Id. at 20-22*. Third, Defendants argue that Thiel cannot base her ECOA discrimination claim on disability because disabled people are not a protected class under the ECOA. *Id. at 22-23*. The Court addresses each argument in turn.

### 1. <u>Failure to State Prima Facie ECOA Case</u>

The Court will recommend that Defendants' motion be denied to the extent it relies on this argument. On the current record, it cannot be determined whether Thiel was denied credit as she has alleged or whether any denial of credit was for appropriate reasons as Defendants have alleged. Defendants' argument, as presently presented, is not so much that Thiel has failed to state a claim but rather that she cannot prove her claim. Dismissal on this basis as the record now exists would be premature.

The Court is mindful that Defendants, in their reply brief, argue that Thiel provides no facts to support her ECOA claim. But because they

raised this argument in their reply brief, Thiel has not had an opportunity to be heard on this argument.

### 2.    NAP Claim Denial as Basis for ECOA Claim

Defendants argue that denial of Thiel's NAP application cannot form the basis of a claim under the ECOA under the facts alleged.  The Court agrees.

As noted, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age[.]"  15 U.S.C. § 1691(a).  The ECOA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."  15 U.S.C. § 1691a(d).

An application for NAP benefits does not fit within the ECOA's definition of "credit."  The NAP "is intended to provide eligible producers of eligible crops coverage equivalent to the catastrophic risk protection level of crop insurance.  NAP is designed to help reduce production risks faced by producers of commercial crops or other agricultural commodities.

NAP will reduce financial losses that occur when natural disasters cause a catastrophic loss of production or where producers are prevented from planting an eligible crop." 7 C.F.R. § 1437.1 (2011).

Under the foregoing description, NAP benefits do not fall within the ECOA's definition of "credit." A recipient is not required to repay them nor do the benefits involve deferral of any repayment. Thus, NAP benefits are not "credit" as defined in the ECOA and do not constitute an extension of credit that would trigger the ECOA's anti-discrimination provisions. *See Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 203 (4th Cir. 2002), *cert. denied*, 538 U.S. 1036 (2003); *Shaumyan v. Sidetex Co., Inc.*, 900 F.2d 16, 18 (2d Cir. 1990) ("[a]bsent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable.").

Because the NAP benefits at issue are not credit as contemplated by the ECOA, Thiel cannot state an ECOA claim based on their denial. The Court is unpersuaded by Thiel's argument that NAP benefits are not insurance. She conceded as much in her Second Amended Complaint when she alleged that she "paid a premium," and noted that "the NAP program was supposed to insure losses ..." and that its "whole purpose ...

is to insure a farmer ..." who may be unable to obtain other insurance. *Court Doc. 44 at ¶ 21.* The Court will recommend that Defendants' motion be granted to the extent it seeks dismissal of Thiel's claim that Defendants failed to provide her payment under the NAP.

### 3. Thiel's Alleged Disability as Basis for ECOA Claim

As noted, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age[.]" 15 U.S.C. § 1691(a). The ECOA does not expressly include "disabled" or persons with a "disability" as a protected class. Thus, the Court will recommend that Defendants' motion be granted to the extent it seeks dismissal of Thiel's ECOA claim based on her alleged disability.

## V. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Defendants' motion (Court Doc. 45) be GRANTED in part and DENIED in part as set forth herein.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a

copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 12th day of October, 2011.

/S/ Carolyn S. Ostby
United States Magistrate Judge